# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| STEVEN A., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. ED CV 20-00717-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Steven A. ("Plaintiff") filed an application for Supplemental Security Income in September 2016, alleging disability beginning April 3, 1992. See Dkt. 14, Administrative Record ("AR") AR 183.[1] After being denied by initial determination, Plaintiff received a hearing before an Administrative Law Judge ("ALJ") in November 2018, see AR 34-66.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

The ALJ issued an unfavorable decision on February 22, 2019. See AR 12-33. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. See AR 17. At step two, the ALJ determined that Plaintiff had the severe impairments of depression and Noonan syndrome. See id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work with some additional limitations. See AR 20. At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a warehouse worker. AR 27. At step five, the ALJ concluded that Plaintiff could work as a cafeteria attendant, routing mail clerk, and stock clerk, apparel. AR 28. Accordingly, the ALJ denied benefits. See AR 29.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II. LEGAL STANDARD

A district court will set aside a denial of Social Security benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

### III. DISCUSSION

The parties dispute whether: (1) the ALJ properly considered whether Plaintiff met or equaled the requirements of Listing 12.04; (2) whether the ALJ erred in discounting the opinion of Plaintiff's treating psychiatrist; (3) whether the ALJ erred in discounting Plaintiff's subjective symptom testimony; and (4) whether the ALJ erred in finding that Plaintiff would be off task for five percent of the workday. See Dkt. 17, Joint Submission ("JS") at 3.

The Court concludes that the ALJ erred in discounting Plaintiff's testimony; the Court also concludes that the ALJ did not properly evaluate the opinion of Plaintiff's treating psychiatrist. Because the Court concludes that these issues require remand, the Court will not decide whether Plaintiff's remaining claims of error would independently warrant relief. Upon remand, the ALJ may wish to consider Plaintiff's other claims of error.

### A. Subjective Symptom Testimony

At the hearing, Plaintiff testified that he had chest pain several times a week. See AR 43. When he worked as a packer, he could not "keep up" because he was "so slow" and was let go.[2] Id. He applied to work at several other places but no one would hire him when he told them of his condition. AR 43-44. He graduated from high school with "a lot of help" from "special ed" teachers. AR 44. He has dizzy spells and difficulty concentrating and learning. See AR 44-45. He lives with his parents and helps them do chores around the house. See AR 45. He is depressed because people "look at [him] different" and then "lay [him] off." AR 46. He "couldn't keep up" at another packing job he had; he worked only one day and felt like he was going to faint.

---

[2] Plaintiff's work history report reflects that he briefly worked as a sorter or packer for three different employers in 2012, 2013, and 2015, respectively. See AR 229. He held the one job for one day, one job for one week, and the third for three weeks. See AR 230-32.

3

AR 47. He passed the written test for his driver's license the second time, after his brother helped him. See AR 49. He does not drive by himself on the freeway, and the longest he has ever driven alone is about ten miles. See AR 49, 55. The longest he has ever worked at a job is three weeks. See AR 53. A representative completed a function report on Plaintiff's behalf in 2016 which reflected similar limitations. See AR 221-27.

The ALJ must make two findings before finding the claimant's pain or symptom testimony not credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citation and internal quotation marks omitted). Second, if the claimant has produced that evidence, and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). If the ALJ's subjective symptom finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ discounted Plaintiff's testimony for three reasons. First, the ALJ concluded that Plaintiff's testimony was not consistent with the objective medical evidence. See AR 23-24. Second, the ALJ noted that Plaintiff's complaints about the severity of his symptoms were inconsistent with the "frequency" and "extent" of the medical treatment he sought and

received. AR 24. Finally, the ALJ concluded that Plaintiff's daily activities were inconsistent with his allegations. See AR 24-25.

  At age three, Plaintiff had cardiac surgery to fix a hole in his heart. See AR 279-81. A physical exam in 2016 noted a systolic heart murmur. See AR 281. In 2017, a cardiologist noted as "problems" a "nonrheumatic pulmonary heart valve insufficiency." AR 350. After an echocardiogram revealed a moderately enlarged right ventricle, the cardiologist referred him to another specialist for "right heart enlargement affecting left ventricle and pulmonic valve evaluation." Id.; see also AR 352 (noting abnormal septal motion, moderately enlarged ventricle, and "moderate to severe" pulmonic regurgitation). An October 2017 report noted Plaintiff's weakness, chronic fatigue, and "dyspnea [i.e., labored breathing] due to congestive heart failure." AR 417. The reviewing cardiologist noted Plaintiff's "severe PR, RV dilation and hypokinesis" and that Plaintiff "needs [pulmonary valve] replacement— would be a good candidate for Moody valve percutaneously." AR 421. A February 2018 note reflected that while no surgery was currently planned, a surgeon had requested Plaintiff's previous surgical records to "determin[e] need/timing" of valve replacement surgery. AR 432. Plaintiff continued to report intermittent chest pain, labored breathing, and fatigue. See AR 432-33. A physician concluded that Plaintiff did not appear to require "urgent" valve replacement at that time. AR 433. A stress exercise treadmill test in 2018 had normal results. See AR 464. A 2018 echocardiogram revealed "moderate [pulmonic regurgitation]," although Plaintiff's pulmonary valve was "not seen well." AR 473. At around the time of the ALJ hearing, Plaintiff had a "walk test," "spirometry . . . bronchodilator," and echocardiogram ordered, AR 492, as well as a follow-up scheduled with the cardiologist in 2019. See AR 491.

  As the ALJ found, Plaintiff suffers from Noonan syndrome, a genetic condition that can cause multiple physical problems throughout life, including

problems of the heart. See AR 17. Plaintiff reported to cardiologists that he experienced fatigue, weakness, and intermittent chest pain, which corresponds with his testimony. While a 2018 examination showed that his 2017 heart enlargement had resolved at least for the moment, Plaintiff continued to suffer from pulmonic regurgitation—i.e., a leaky heart valve. The severity of Plaintiff's heart condition may have waxed and waned over the past few years, but there is no doubt that he has one. Indeed, one cardiologist suspected he might need immediate valve replacement. That Plaintiff has not had this surgery corroborates his testimony; had his heart been surgically repaired, the symptoms might have gone away. Pulmonary valve regurgitation, or a leaky pulmonary valve (the valve that controls the flow of blood from the heart to the lungs), can cause chest pain or pressure, fatigue, and dizziness—all things about which Plaintiff complained.[3] The ALJ noted that Plaintiff was not prescribed medication for his heart condition, see AR 24, but there is no indication in the record that any medication would have fixed or alleviated symptoms caused by a leaky heart valve. Given this record, the ALJ's first two reasons for discounting Plaintiff's testimony are not supported by substantial evidence.

      Nor does substantial evidence support the ALJ's conclusion that Plaintiff's daily activities were inconsistent with his testimony about the severity of his condition. The Ninth Circuit has specified "two grounds for using daily activities to form the basis of an adverse credibility determination": (1) whether or not they "contradict [the claimant's] other testimony" and (2) whether or not the activities of daily living meet "the threshold for transferable

---

[3] See https://www.mercy.com/health-care-services/heart-vascular/conditions/pulmonary-valve-regurgitation (last accessed January 27, 2021).

work skills." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Here, Plaintiff's limited activities did not contradict his other testimony. Plaintiff testified that his heart condition caused chest pain and dizzy spells, which scared him and compounded his severe difficulties with maintaining concentration and pace. If anything, this testimony was consistent with his stated daily activities and with his inability to maintain a job for more than a few days despite repeated attempts. The ALJ also failed to demonstrate that these limited daily activities would be transferable to the workplace. Therefore, Plaintiff's daily activities were not a clear and convincing reason for discounting his testimony.

Thus, the ALJ did not provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony. Remand is accordingly warranted on this issue.

**B.     Treating Psychiatrist's Opinion**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014). Where a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r of SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, as is the case here, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citation omitted). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other

factors. See 20 C.F.R. § 416.927(c). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

Dr. Schaepper was Plaintiff's treating psychiatrist beginning in November 2016, and she saw him every three months. See AR 502-04. She completed a Mental Impairment Questionnaire in December 2018, listing as her clinical findings depressed mood for over six months, "cognitive slowing, unable to process due to depression and intellectual disability," and "hopelessness and worried, because he cannot keep up physically to do manual labor." AR 498. She assessed Plaintiff with a "poor" prognosis "cognitively, intellectually, mood and physically." Id. She wrote that, upon the first interview, she noticed "slow processing" and an "inability to understand complex issues around his illness." AR 500. She opined that he functioned "at a 3rd grade cognitive level." Id. She assessed him with marked or extreme limitations in several areas, including concentrating, persisting, and maintaining pace. Id. She noted that his Noonan syndrome was a "congenital disorder with cardiac defects, which decrease his endurance and strength." AR 501.

The ALJ gave Dr. Schaepper's opinion little weight. See AR 27. Because Dr. Schaepper's opinion was contradicted the ALJ had to provide specific and legitimate reasons supported by substantial evidence to reject her opinion. The ALJ reasoned that Dr. Schaepper's opinion warranted little weight because her assessment was based on Plaintiff's subjective complaints; she gave "insufficient references to medically acceptable clinical or diagnostic findings"; and the objective medical evidence did not support her assessments. Id. But, as discussed above, the ALJ erred in discounting Plaintiff's testimony.

Furthermore, contrary to the ALJ's assertions, Dr. Schaepper relied not only on Plaintiff's subjective complaints but also her own observations during several sessions over two years. And, the objective medical evidence, including her own notes and Plaintiff's undisputed genetic and cardiac conditions, support her assessments. She reviewed psychological testing performed on Plaintiff in 2007, which noted "achievement low in all areas, not due to motivation, social maladjustment." AR 338. On several occasions, she assessed Plaintiff with slurred speech, see AR 325, poor or impaired concentration, memory, insight, or judgment, see AR 325, 333, 339, 380, 383, 386, 389, 333, 405, and below average intellect, see AR 333, 339, 398. In February 2018, a psychology intern at a clinic in Riverside examined Plaintiff and concluded that the severity of his functional impairment was "moderate to severe," AR 440, and estimated his intelligence to be "below average" and his insight to be "poor," AR 443. While Dr. Schaepper could have made more references to "clinical or diagnostic findings," the ones she did make were sufficient to support her opinion.

Accordingly, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting the opinion of Dr. Schaepper, Plaintiff's treating psychiatrist. Remand is also warranted on this claim of error.

**C.     Remand Is Warranted**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not

clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003). Here, the Court finds that remand is the appropriate remedy to allow the ALJ to reconsider Plaintiff's subjective symptom testimony and the opinion of Plaintiff's treating psychiatrist. The ALJ may also reconsider Plaintiff's other claims of error and conduct such other proceedings as are warranted.

## IV. CONCLUSION

The decision is the Social Security Commissioner is reversed and this case is remanded.

IT IS SO ORDERED.

Date: January 27, 2021

DOUGLAS F. McCORMICK
United States Magistrate Judge